## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **STEPHANIE L. CALE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:15-06243** |
| | ) | |
| **CAROLYN W. COLVIN ,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social
Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II
of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Orders entered May 15, 2015, and
January 5, 2016 (Document Nos. 5 and 15.), this case was referred to the undersigned United States
Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact
and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending
before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 12
and 13.), and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, Stephanie Leigh Cale, (hereinafter referred to as "Claimant"), filed
applications for DIB and SSI on November 7, 2011 (protective filing date), alleging disability as
of July 1, 2011, due to "back problems – spinal, scoliosis, spinolosis; knee problems – nerve
damage; lower abdominal problems; neck pain causes migraines and nausea; stomach problems –
gastritis and hernia; fibromyalgia; bi-polar, anxiety, PTSD, chemical imbalance."[1] (Tr. at 83, 285-

---

[1] On her form Disability Report – Appeal, undated, Claimant alleged that she had increased back and knee
problems. (Tr. at 358.)

90, 291-97, 317, 321.) The claim was denied initially and upon reconsideration. (Tr. at 83, 114-23, 124, 125-35, 136, 137-48, 149-60, 161-62, 167-69, 173-75, 179-81, 184-86, 190-92, 196-98, 203-05, 207-09, 210-12, 214-16.) On September 17, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 218-19.) A hearing was held on December 27, 2013, before the Honorable Benjamin R. McMillion. (Tr. at 95-113.) By decision dated January 24, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 83-89.) The ALJ's decision became the final decision of the Commissioner on March 18, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 19-25.) Claimant filed the present action seeking judicial review of the administrative decision on May 15, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does,

the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (c) Rating the degree of functional limitation. (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to,

chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). [2] Fourth, if the claimant's

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since July 1, 2011, the application date. (Tr. at 85, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "spinal stenosis and history of L3 fracture; stomach hernia; bilateral knee degenerative disease status post right knee ACL repair; fibromyalgia; bipolar disorder; [and] post-traumatic stress disorder," which

---

or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

were severe impairments. (Tr. at 85, Finding No. 3.) At the third inquiry, the ALJ concluded that

Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.

(Tr. at 86, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity

("RFC") to perform work at the light level of exertion, as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) in that the [C]laimant could
> lift/carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or
> walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She could
> occasionally climb, balance, stoop, kneel, crouch, and crawl. She should avoid
> concentrated exposure to extreme cold, heat, and hazards. She could complete jobs
> that only required 1-2 step job instructions, and that were simple and routine in
> nature.

(Tr. at 87, Finding No. 5.) At step four, the ALJ found that Claimant was capable of performing

her past relevant work as a cashier and housekeeper. (Tr. at 88, Finding No. 6.) On the basis of

testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded

that Claimant could perform jobs such as an assembler, a sales attendant, and a mail routing clerk,

at the unskilled light exertional level. (Tr. at 89, Finding No. 7.) On these bases, benefits were

denied. (Tr. at 89, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on November 3, 1980, and was 33 years old at the time of the initial administrative hearing, December 27, 2013. (Tr. at 285, 291.) Claimant had a ninth grade education and was able to communicate in English. (Tr. at 98, 322.) In the past, Claimant worked as a cashier, fast foods worker, sandwich maker, housekeeper, and front desk clerk. (Tr. at 88, 110, 322.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing her RFC. (Document No. 12 at 6-9.) Specifically, Claimant asserts that the ALJ failed to provide the requisite narrative for his assessed RFC. (<u>Id.</u> at 7.) She asserts that the ALJ failed to identify any evidence he considered in finding only mild limitations in social functioning and moderate limitations in maintaining concentration, persistence, or pace. (<u>Id.</u>) She contends that the record demonstrated a pattern of severe deficits in social functioning and a treating source opinion that precluded highly stressful jobs or work with the public. (<u>Id.</u>)

7

Citing <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), Claimant contends that the ALJ's RFC assessment that limited her to performing work with one- to two-step job instructions was insufficient to accommodate the moderate limitations in maintaining concentration, persistence, or pace. (<u>Id.</u> at 8-9.) Additionally, she asserts that the ALJ failed to include all her limitations in the hypothetical question to the VE. (<u>Id.</u> at 8.) Claimant contends that the VE never was asked to consider the impact of additional limitations in social functioning, concentration, persistence, or pace. (<u>Id.</u>) Accordingly, Claimant contends that remand is required for further consideration of her RFC. (<u>Id.</u> at 8-9.)

In response, the Commissioner asserts that the ALJ's assessed RFC is supported by substantial evidence. (Document No. 13 at 11-16.) The Commissioner asserts that the ALJ specifically stated the limitations he found in assessing Claimant's RFC, and thereafter, set forth a narrative along with his analysis of Claimant's credibility. (<u>Id.</u> at 12.) Although Claimant alleges that the ALJ failed to identify the evidence upon which he relied in formulating his RFC, the Commissioner asserts that the ALJ discussed in his narrative, the records from Seneca. (<u>Id.</u> at 13.) Specifically, the ALJ noted Claimant's counseling and medication, and that he did well with treatment. (<u>Id.</u>) Mental status findings essentially were normal. (<u>Id.</u>) Despite Claimant's allegation that the evidence demonstrated a pattern of severe deficits in social functioning, the Commissioner asserts that the ALJ's analysis of Seneca's records was reasonable. (<u>Id.</u>) The records demonstrated that her symptoms were controlled by medications. (<u>Id.</u> at 14.) Regarding Dr. Browning's opinion, the Commissioner asserts that her opinion was rendered in July 2010, nearly a year before the relevant period. (<u>Id.</u>) Furthermore, Dr. Browning was not a mental health practitioner, Claimant continued to work with her after her opinion, and the records from Seneca failed to include similar limitations. (<u>Id.</u>) Finally, the Commissioner asserts that despite Claimant's allegation that the ALJ's discussion of the medical records was insufficient, the bulk of the medical records pertain to a time prior to the relevant period. (<u>Id.</u>) Accordingly, the Commissioner contends that the ALJ reasonably considered the evidence regarding Claimant's mental impairments. (<u>Id.</u> at 14-

15.)

Regarding Claimant's moderate difficulties in maintaining concentration, persistence, or pace, the Commissioner asserts that Claimant's reliance on <u>Mascio</u> is misplaced. (<u>Id.</u> at 15.) The Commissioner asserts that the holding in <u>Mascio</u> is not a *per se* rule and that the ALJ's narrative discussion addressed her relevant mental impairments. (<u>Id.</u>) Unlike <u>Mascio</u>, the ALJ included mental health limitations in the RFC, and explained his findings in formulating the RFC. (<u>Id.</u>)

Claimant asserts in reply that the holding in <u>Mascio</u> is applicable to the ALJ's controlling hypothetical question and RFC in this case. (Document No. 14 at 2.) She further asserts that as the Commissioner notes, the ALJ summarized only the relatively benign mental status findings contained in the Seneca records. (<u>Id.</u> at 2-4.) He failed to acknowledge the medical records that demonstrated her ongoing struggle with symptoms of bipolar disorder and the side effects from her medications. (<u>Id.</u> at 4.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider all the available evidence in the record in determining that her physical impairments did not meet a listing level impairment at step three of the sequential analysis. (Document No. 12 at 9-13.) Claimant asserts that the ALJ failed to reference any specific Listing considered and failed to consider any specific physical impairment at length, despite treatment notes and radiology reports that established a severe lumbar impairment. (<u>Id.</u> at 10.) Rather, the ALJ referenced only one physical therapy note from April 2012. (<u>Id.</u>) Specifically, Claimant contends that the ALJ failed to consider evidence from Dr. Lemmer, MedExpress, and imaging reports. (<u>Id.</u> at 11-12.) Thus, Claimant asserts that the ALJ erred in failing to consider specifically whether her impairments met or equaled Listing 1.04. (<u>Id.</u> at 12.)

In response, the Commissioner asserts that the record did not contain ample evidence that Claimant met a listing level impairment. (Document No. 13 at 16-18.) She asserts that the ALJ was not

required to provide an exhaustive point-by-point discussion of each listing considered. (Id. at 16.) Respecting Listing 1.04, the Commissioner asserts that the Claimant is unable to meet subparagraphs A, B, or C, as there is no evidence of nerve root or spinal cord compression. (Id. at 17.) Dr. Feldenezer specifically found no spinal cord impingement, nerve root impingement, radiculopathy, or neuropathy, and EMG testing was normal. (Id.) Furthermore, Claimant had normal motor function, sensation, reflexes, and a negative straight leg test. (Id.) There also is no evidence of chronic pain or weakness or inability to ambulate. (Id. at 18.) Notwithstanding her automobile accident, the findings do not establish that she met Listing 1.04, as her fracture had healed by November 2012. (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to apply SSR 12-2p, in analyzing her fibromyalgia. (Document No. 12 at 13-16.) Although the ALJ found that her fibromyalgia was a severe impairment, he failed to assess the impairment properly at steps three, four, and five of the sequential analysis, as required by SSR 12-2p. (Id. at 14.) At step three, the ALJ failed to consider whether her fibromyalgia equaled a listing level impairment, and in fact, failed to mention fibromyalgia at all in his step three analysis. (Id.) Claimant asserts that the obvious listing, Listing 14.09D, was not discussed. (Id. at 15.)

In response, the Commissioner asserts that the minimal evidence of any functional limitations resulting from Claimant's fibromyalgia did not require further discussion of fibromyalgia. (Document No. 13 at 18-20.) The Commissioner contends that Claimant "was merely diagnosed with fibromyalgia." (Id. at 18.) She notes that the only physician who recommended any treatment for fibromyalgia was Dr. Lemmer, but even then he assessed no limitations. (Id. at 19.) Exams essentially were normal and she had only mild loss of lumbar flexion and extension. (Id.) Accordingly, the Commissioner contends that the ALJ's analysis of Claimant's fibromyalgia was supported by the record. (Id. at 19-20.)

Claimant asserts in reply, that the Commissioner provides *post hoc* rationale in her brief.

(Document No. 14 at 5.) Claimant asserts that the ALJ failed to discuss or mention Claimant's fibromyalgia at step three and in assessing her credibility, the ALJ failed to consider that her symptoms of fibromyalgia could wax and wane. (Id. at 6.)

Analysis.

1. Mental RFC Assessment:

Claimant first alleges that the ALJ erred in assessing her mental RFC. (Document No. 12 at 6-9.) Specifically, Claimant asserts that the ALJ failed to consider all the evidence and that his hypothetical question failed to account for the moderate limitations in maintaining concentration, persistence, or pace, and that the ALJ failed to provide an adequate explanation for her RFC assessment. (Id.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Id. at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." Id. Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and

mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7.   The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." Id.

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In the instant case, the ALJ found at step three of the sequential analysis, that Claimant had

mild limitations in maintaining daily activities and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 86.) The ALJ did not explain his decision in rating the degree of functioning regarding Claimant's mental impairments. In assessing Claimant's RFC, the ALJ found that mentally, she required jobs with 1-2 step job instructions and that were simple and routine in nature. (Tr. at 87.) Contrary to the Commissioner's argument, the undersigned finds that the ALJ failed to provide the narrative explanation for his RFC assessment, as required in <u>Mascio</u>. The ALJ devoted only one paragraph to the actual medical record pertaining to Claimant's mental impairments, and noted that examination findings essentially were normal and that her conditions improved with treatment. (Tr. at 88.) The ALJ also notes in a separate paragraph that she received counseling and monthly medication refills and that she did well with treatment. (<u>Id.</u>) He also noted that Claimant's concentration was intact and her mood was good. (<u>Id.</u>) The ALJ's hypothetical question to the VE that considered from a mental standpoint, a person "who should repeat one to two-step job instructions," may have been sufficient to accommodate Claimant's mental limitations, but without a proper explanation in the narrative discussion, the undersigned is unable to find that the hypothetical questions were proper. Accordingly, the undersigned recommends that the District Court remand this matter for further consideration of Claimant's RFC.

2. <u>Step Three</u>.

Claimant alleges that the ALJ erred in his analysis at step three of the sequential analysis and specifically, that he failed to consider whether she met or equaled Listing 1.04. (Document No. 12 at 9-13.) The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, <u>see</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532, 110 S.Ct. 885,

892, 107 L.Ed.2d 967 (1990); 20 C.F.R § 416.925(a) (2014). Section 1.04 of the Listing of

Impairments provides criteria for determining whether an individual is disabled by disorders of the

spine. Such spinal disorders include, but are not limited to, a herniated nucleus pulpous, spinal

arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebra.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (2014). The required level of severity for Listing § 1.04

is satisfied when the claimant has a disorder of the spine resulting in compromise of a nerve or the

spinal cord with any one of the three following requirements:

> A.     Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or reflex
> loss and, if there is involvement of the lower back, positive straight-leg raising test
> (sitting and supine);
>
> OR
>
> B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of
> tissue biopsy, or by appropriate medically acceptable imaging, manifested by
> severe burning or painful dyesthesia, resulting in the need for changes in position
> or posture more than once every 2 hours;
>
> OR
>
>
> C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by
> findings on appropriate medically acceptable imaging, manifested by chronic
> nonradicular pain and weakness, and resulting in inability to ambulate effectively,
> as defined in 1.00B2b.

In his decision, the ALJ concluded at step three of the sequential analysis that Claimant's

impairments did not meet or medically equal the criteria of any listing under section 1.01,

regarding the musculoskeletal system. (Tr. at 86.) The ALJ did not specifically reference Listing

1.04, or provide an explanation for his analysis thereunder. Nevertheless, as the Commissioner

points out, the evidence fails to establish that Claimant meets or equals Listing 1.04. Accordingly,

the undersigned finds that any error the ALJ may have committed in failing to provide an explanation for his analysis, is harmless.

During the relevant period of time, the evidence established that Claimant suffered from a severe spinal impairment. Nevertheless, pursuant to Listing 1.04A, the record failed to establish that she suffered any nerve root compression, motor loss, sensory or reflex loss, or positive straight leg raising test. As the Commissioner notes, on November 30, 2012, Dr. John Feldenezer, M.D., a neurosurgeon, found on physical examination that Claimant had normal strength, sensation, and reflexes; no paraspinous spasm; no sciatic notch tenderness; negative straight leg raising testing; and an unremarkable gait. (Tr. at 722.) He reviewed the CT and MRI scans on the day of her accident and the most recent images and noted that she maintained normal lordosis and disc height except some moderate degenerative change at L2-3. (Id.) He noted no significant disc herniation at the L2-3 level and the remaining lumbar discs were "entirely normal." (Id.) Dr. Feldenezer specifically noted that there was no significant canal or foraminal stenosis or nerve root impingement, which explained a clinical absence of radiculopathy. (Id.) He assessed chronic lumbar syndrome, which was exacerbated by her lumbar injury and motor vehicle accident on April 26, 2012. (Id.) He noted that her fracture had healed and EMG and nerve conduction studies were normal. (Id.) He further found that the swelling of her lower extremities was not related to her lower back impairment. (Id.)

Respecting Listing 1.04B, the record does not support any finding of spinal arachnoiditis, and respecting Listing 1.04C, there was an absence of significant stenosis that resulted in an inability to ambulate effectively. Accordingly, despite the ALJ's failure to include a discussion of step three analysis respecting Claimant's mental impairment, the undersigned finds that the record fails to establish that she meets any section under Listing 1.04, and therefore, that any error the

15

ALJ may have committed is harmless.

    3.  <u>Fibromyalgia Analysis</u>.

Finally, Claimant alleges that the ALJ erred in assessing her fibromyalgia pursuant to SSR 12-2p. (Document No. 12 at 13-16.) Respecting Claimant's statements about her symptoms of fibromyalgia, SSR 12-2p requires that the ALJ follow the two-step process set forth in the Regulations and SSR 96-7p. SSR 12-2p, 2012 WL 3104869, *5 (July 25, 2012). As Claimant notes, the ALJ failed essentially even to mention her fibromyalgia after step two of the sequential analysis. There is no discussion as to whether Claimant's diagnosis was confirmed by at least eleven positive tender points on physical examination and some complaints of generalized pain. Also, there is no indication that the ALJ considered the variance of her symptoms associated with the fibromyalgia when assessing her credibility and RFC. Accordingly, the undersigned finds that this matter should be remanded for further consideration of her fibromyalgia.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for further administrative proceedings for further consideration of Claimant's mental RFC and any limitations resulting from her fibromyalgia, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules

6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 25, 2016.

Omar J. Aboulhosn
United States Magistrate Judge