# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

STEPHANIE L. CALE,

          Plaintiff,

v.                                        CIVIL ACTION NO.   5:15-cv-06243

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

## MEMORANDUM OPINION AND ORDER

This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act (SSA), 42 U.S.C. §§ 401-433,1381-1383f.   By *Standing Order* (Document 5) entered on May 15, 2015, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).   On January 5, 2016, following the retirement of Magistrate Judge VanDervort, the matter was referred to the Honorable Omar J. Aboulhosn.   On July 25, 2016, Magistrate Judge Aboulhosn submitted a *Proposed Findings and Recommendation* (PF&R) (Document 16), wherein it is recommended that this Court grant the Plaintiff's motion for judgment on the pleadings (Document 12), deny the Defendant's motion for judgment on the pleadings (Document 13), reverse the final decision of the Commissioner, remand for further consideration, and dismiss this matter from the Court's docket.

The Court has reviewed the *Defendant's Objections to the Magistrate Judge's Report and Recommendation* (Document 17), the *Plaintiff's Response to Defendant's Objections to the Magistrate Judge's Proposed Finding and Recommendation* (Document 18), as well as the original briefing, the administrative record (Document 10 and exhibits), and the PF&R. For the reasons stated herein, the Court finds that the objections should be overruled.

The Plaintiff, Stephanie Cale, filed applications for DIB and SSI on November 7, 2011. She claimed that she was disabled as of July 1, 2011, due to back and knee problems, nerve damage, lower abdominal problems, neck pain, migraines, nausea, stomach problems, fibromyalgia, bi-polar, anxiety, PTSD, and a chemical imbalance. (PF&R at 1.) Her claim was denied. She requested a hearing before an Administrative Law Judge (ALJ), and the Honorable Benjamin R. McMillion presided over a hearing on December 27, 2013. He denied her claim on January 24, 2014, and the Appeals Counsel denied Ms. Cale's request for review on March 18, 2015.

## APPLICABLE LAW

Disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step sequential inquiry to determine eligibility for social security disability benefits. If a claimant is determined to not be disabled at one step, the evaluation does not proceed to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005)). The Fourth Circuit has summarized the five-step process as follows:

2

> the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). "If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity, which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work." (citing 20 C.F.R. § 416.945(a)(1)). *Id.* at 635. If the claimant is able to perform his or her past work, the ALJ can find the claimant not to be disabled. *Id.* If the claimant is not able to perform his or her past work, the ALJ proceeds to step five, where "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* (citing 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429).

## STANDARD OF REVIEW

The Federal Magistrates Act requires a district court to conduct a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, a district court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt

proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Running parallel with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

Section 405(g) of the SSA provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g). "When examining an SSA disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir.

1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

## DISCUSSION

The Magistrate Judge set forth the Plaintiff's background and medical conditions, and the Court incorporates those findings by reference herein. In brief summary, Ms. Cale was 33 years old at the time of the initial hearing. She has a ninth-grade education, and previously worked as a cashier, fast food worker, sandwich maker, housekeeper, and front desk clerk. Ms. Cale "had not engaged in substantial gainful activity since July 1, 2011, the application date." (PF&R at 5.)

The Magistrate Judge found in favor of the Plaintiff on two grounds, and the Defendant objects to both. First, the Magistrate Judge found that "[t]he ALJ did not explain his decision in rating the degree of functioning regarding the Claimant's mental impairments" and "failed to provide the narrative explanation for his RFC assessment." (PF&R at 13.) Therefore, the PF&R recommends remand for further consideration and explanation of the Plaintiff's RFC. Second, the Magistrate Judge found that "the ALJ failed essentially even to mention [the Plaintiff's] fibromyalgia after step two of the sequential analysis" and did not address "the variance of her symptoms associated with the fibromyalgia when assessing her credibility and RFC." (PF&R at 16.) The Magistrate Judge recommends remand for further consideration of the Plaintiff's fibromyalgia.

The Defendant argues that "the ALJ's narrative discussion was sufficient to show what evidence he relied upon formulating the mental RFC." (Obj. at 3.) Even if the narrative were not sufficient, however, the Defendant argues that remand would be required only if the ALJ had failed to address or explain conflicting evidence, thus frustrating judicial review. (*Id.*) Finally,

the Defendant argues that the ALJ's failure to discuss the Plaintiff's fibromyalgia does not require remand because the record does not suggest it caused any physical limitation. (*Id.* at 5.) The Plaintiff responds that the Magistrate Judge properly recommended remand based on both the lack of explanation regarding the Plaintiff's mental limitations and the failure to consider Ms. Cale's fibromyalgia. She emphasizes that the Court should not search the record for evidence to support the ALJ's conclusions, but should instead remand for additional investigation and explanation.

The ALJ found that Ms. Cale "had not engaged in substantial gainful activity since July 1, 2011," meeting step one of the sequential analysis. (Tr. at 85.) He found that she suffered severe impairments, namely "spinal stenosis and history of L3 fracture; stomach hernia; bilateral knee degenerative disease status post right knee ACL repair; fibromyalgia; bipolar disorder; post-traumatic stress disorder." (*Id.*) In his Step Three analysis of whether the Plaintiff's ailments meet or equal a listed ailment, the ALJ found that "[i]n activities of daily living, the claimant has mild restriction. In social functioning, the claimant has mild restriction. With regard to concentration, persistence, or pace, the claimant has moderate difficulties." (Tr. at 86.) Those impairments did not meet or medically equal the severity of any listed impairment, and so the ALJ proceeded to step four of the sequential analysis.

In his step-four RFC assessment, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 87.) He briefly noted that counseling and medication were helpful in addressing Ms. Cale's mental health conditions, and recounted medical evidence supporting his conclusion that her back and knee problems, following treatment, were

6

not severe enough to prevent light work. He again noted that "[t]he medical evidence suggests the claimant does have severe mental impairments that cause some limitations in [her] daily activities." (Tr. at 88.) The ALJ made the following RFC assessment:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour work day. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, heat, and hazards. She could complete jobs that only required 1-2 step job instructions, and that were simple and routine in nature.

(Tr. at 87.) The ALJ concluded that Ms. Cale's residual functional capacity would permit her to perform past relevant work as a cashier and housekeeper, as well as other jobs, such as assembler, sales attendant, or mail routing clerk. Therefore, he found that she was not disabled and denied benefits.

During the hearing, the ALJ asked a vocational expert a series of hypothetical questions. He began by asking about the potential jobs available to an individual who could "lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk six hours total and sit six hours total in an eight-hour workday; occasionally climb, balance, stoop, knee, crouch, and crawl; avoid concentrated exposure to extreme cold, extreme heat, and hazards; and who should repeat one to two-step job instructions." (Tr. at 110-11.) The vocational expert replied that Ms. Cale would remain capable of performing her past work as a cashier or housekeeper, though her previous job as a housekeeper was more strenuous than is typical and was beyond her capabilities. (*Id.* at 111.) Other jobs available in the local and national economy include assembler, sales attendant, and mail routing clerk. If Ms. Cale were also limited to occasional fingering, handling, and feeling, no jobs

7

would remain.  (Tr. at 111-12.)   If, in addition to the limitations in the initial hypothetical, she were also off-task 20% of the day, no jobs would remain.   (Tr. at 112.)

The Court finds that the ALJ did not adequately explain his RFC assessment as to Ms. Cale's mental health limitations.  After finding that she suffered mild restrictions in social functioning and everyday life and moderate difficulties in concentration, persistence, or pace, he concluded that she was able to perform simple and routine jobs that required only 1-2 step instructions.  He provided little discussion as to why the proposed restrictions were sufficient to account for her mental health limitations.  As the Fourth Circuit pointed out, "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, or unskilled work,'" as "the ability to perform simple tasks differs from the ability to stay on task."  *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (citing and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir.2011)).   The Court adopted the Second Circuit's guidance that "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* at 636 (quoting *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir.2013)).   The Court is unable to determine whether the ALJ concluded that the Plaintiff's mental health complaints did not warrant any limitations related to pacing and concentration and/or work with coworkers and the public, and if so, upon what evidence he based such a determination.   Thus, remand is required.

The ALJ listed fibromyalgia among the severe impairments affecting the Plaintiff, but gave it no further discussion.  As the Magistrate Judge explained, "SSR 12-2 requires that the ALJ follow the two step process set forth in the Regulations and SSR 97-2p."   (PF&R at 16); *see also*

8

*Soc. Sec. Ruling, Ssr 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P (S.S.A. July 25, 2012) (setting forth the elements necessary to support a fibromyalgia diagnosis, and noting that fibromyalgia symptoms can wax and wane, requiring consideration of a longitudinal record). Although the Defendant correctly notes that the record is a bit thin with respect to Ms. Cale's fibromyalgia diagnosis, the Court finds that the ALJ's failure to address fibromyalgia at all after finding it to be one of Ms. Cale's impairments requires remand. With no analysis or explanation regarding the limitations, if any, caused by fibromyalgia, from the ALJ, the Court cannot determine whether his conclusions are supported by substantial evidence. Thus, the Defendant's objections should be overruled and this matter should be remanded.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Objections to the Magistrate Judge's Report and Recommendation* (Document 17) be **OVERRULED**, the Magistrate Judge's *Proposed Findings and Recommendation* (Document 16) be **ADOPTED**, the relief requested in *Plaintiff's Brief in Support of Judgment on the Pleadings* (Document 12) be **GRANTED**, to the extent it seeks a remand, the relief requested in the *Brief in Support of Defendant's Decision* (Document 13) be **DENIED**, that the decision of the Commissioner be **VACATED,** and that this matter be **REMANDED** to the Commissioner for further consideration. Finally, the Court **ORDERS** that this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 31, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA